947 F.2d 588
 138 L.R.R.M. (BNA) 2661, 60 USLW 2372,
60 USLW 23,721,
120 Lab.Cas. P 10,977
 HOLO-KROME COMPANY, Petitioner-Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent-Cross-Petitioner,
International Union, United Automobile, Aeorspace and
Agricultural Implement Workers of America, (UAW),
Local 376, Intervenor.
 Nos. 163, 322, Dockets 91-4061, 91-4085.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 11, 1991.
Decided Oct. 15, 1991.
Opinion on Denial of Rehearing Filed
Jan. 17, 1992.
 
 1
 Burton Kainen, Hartford, Conn. (Diana Garfield, Siegel, O'Connor, Schiff, Zangari & Kainen, P.C., on the brief), for petitioner-cross-respondent.
 
 
 2
 Marilyn O'Rourke, Washington, D.C. (Jerry M. Hunter, Gen. Counsel, D. Randall Frye, Acting Deputy Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, and William R. Stewart, Deputy Asst. Gen. Counsel, on the brief), for respondent-cross-petitioner.
 
 
 3
 Gregg D. Adler, Hartford, Conn. (Stephen E. Meili, Gould, Livingston, Adler & Pulda, on the brief), for intervenor.
 
 
 4
 Before NEWMAN and PRATT, Circuit Judges, and POLLACK, District Judge.*
 
 MILTON POLLACK, Senior District Judge:
 
 5
 Holo-Krome Co. asks us to set aside a supplemental decision and order of the National Labor Relations Board (the "Board") issued on April 5, 1991, reversing the conclusion of an Administrative Law Judge (the "ALJ") that Holo-Krome, the employer, did not violate Sections 8(a)(1), (3) and (4) of the National Labor Relations Act (the "Act"), 29 U.S.C. §§ 151-68. Holo-Krome Co., 302 N.L.R.B. No. 71, 137 L.R.R.M. 1208 (Apr. 5, 1991). The Board's order directs reinstatement and back pay relief and the Board's General Counsel has made a cross-application for enforcement. The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), Local 376 (the "Union"), the charging party, was granted leave to intervene in support of the Board. Because there simply is not substantial evidence that the employer violated the Act, or that the failure to rehire Union supporters Giuseppe Pace and John Rutkauski was unlawfully motivated and prompted by the employees' exercise of protected activity, we grant the petition, set aside the Board's finding of violation, deny enforcement and dismiss the proceedings.
 
 BACKGROUND
 
 6
 Giuseppe Pace and John Rutkauski had worked in Holo-Krome's West Hartford, Connecticut industrial fastener manufacturing plant for 11 and eight years, respectively, when the Union attempted to organize Holo-Krome's workers in 1985. Both employees openly and actively supported this effort, which ultimately failed. Following the unsuccessful Union election, Holo-Krome worker George Campbell, an election observer, refused to shake Pace's hand when Pace told him "no hard feelings." Campbell later became plant manager.
 
 
 7
 More than six months after the election, Holo-Krome laid off Pace and Rutkauski along with several other of the plant's 170 employees. The Union claimed that the layoff was discriminatory, but the Board's regional office refused to issue a complaint, finding in June 1986 that the layoff and failure to recall certain employees, including Pace and Rutkauski, was a legitimate economic measure. The regional office determined that Holo-Krome did not have a policy of recalling former employees and that neither Pace nor Rutkauski had even reapplied for employment since the layoff.
 
 
 8
 The following month, Rutkauski inquired about reemployment with Holo-Krome and was told that the company was not hiring. The next day Holo-Krome began advertising job openings in several newspapers. Pace also contacted Holo-Krome about rehiring and was told to come in and fill out an application. The next day Campbell, who by then had been promoted to plant manager, informed the hiring employee to stop taking applications for the advertised positions because one was being automated and the other was being filled internally. A few days later Pace and Rutkauski submitted applications but were not hired. Holo-Krome did not hire anyone to fill the advertised positions. Three months later, in late September 1986, the Board issued a complaint alleging that Holo-Krome violated the Act by refusing to hire Pace and Rutkauski because of their unionizing activities and involvement with the prior unfair labor practices complaint, which the regional office of the Board had rejected.
 
 
 9
 In January 1987, Holo-Krome notified Rutkauski and Pace by mail of a job opening, for which Rutkauski promptly applied. Holo-Krome hired him shortly thereafter. Later that month, Holo-Krome tried to call Pace several times about another job opening, but only reached his family. Holo-Krome also sent him a certified letter, which Pace never picked up. Pace did not contact Holo-Krome until the end of February, when the opening was no longer available.
 
 
 10
 On March 17, 1988 an ALJ found that the Board's General Counsel did not establish a prima facie case that Holo-Krome acted unlawfully by failing to rehire Pace and Rutkauski. See Wright Line, Div. of Wright Line, Inc., 251 N.L.R.B. 1083, (1980), enforced as modified, 662 F.2d 899 (1st Cir.1981), cert. denied, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). The Board reversed the ALJ's ruling the following year. Holo-Krome Co, 293 N.L.R.B. No. 65, 1988-89, NLRB Dec. (CCH) p 15,451 (March 31, 1989).[1] Holo-Krome petitioned for review and the General Counsel cross-petitioned for enforcement.
 
 
 11
 This Court found in July 1990 that the Board improperly relied on Holo-Krome's lawful expressions of opinion about union activity[2] as a basis for finding anti-union animus. Holo-Krome Co. v. NLRB, 907 F.2d 1343 (2d Cir.1990). Therefore, we remanded the case for reconsideration without reference to such statements. We explicitly did not rule whether the Board's order was otherwise supported by substantial evidence. This Court also ordered the Board to correct its order regarding Rutkauski's back pay period, if the Board affirmed, since the Board mistakenly ordered backpay for two years in which Rutkauski worked for Holo-Krome. We further ordered that if the Board found an obligation to rehire Pace, it should determine whether Holo-Krome met its obligation, since the Board did not rule on that aspect of the ALJ's findings.
 
 
 12
 The Board did affirm its prior holding and found that Holo-Krome's certified letter to Pace did not constitute a valid employment offer. Holo-Krome petitioned for review and the Board cross-petitioned for enforcement.
 
 DISCUSSION
 
 13
 On this appeal, Holo-Krome claims that the Board did not follow this Court's instructions on remand, that the Board's decision that the General Counsel made a prima facie case was not based on substantial evidence and ignored the ALJ's resolution of credibility issues, that the Board misapplied the Wright Line rule requiring the plaintiffs to establish a prima facie case, see Wright Line, supra, and that Pace had no right to reinstatement even if there were a violation.
 
 I. The Wright Line Rule
 
 14
 In an action under the Act, the General Counsel bears the burden of proving by a preponderance of the credible evidence that an employee's protected conduct was a substantial or motivating factor in an employer's adverse personnel decision. The employer can, however, avoid liability after the General Counsel has made a prima facie case by showing it would have taken the same actions regardless of this forbidden motivation. NLRB v. Transportation Management Corp., 462 U.S. 393, 397-403, 103 S.Ct. 2469, 2472-75, 76 L.Ed.2d 667, 672-76 (1983) (approving the analysis used in Wright Line, supra). Subsequent application of this "Wright Line rule" has demonstrated that the General Counsel's burden is not insignificant. If the General Counsel presents evidence of employer conduct that can be interpreted either as lawful or unlawful and the record as a whole does not provide a sufficient basis for choosing the unlawful interpretation, the burden has not been met by the General Counsel. See Pullman Power Products Corp., 275 N.L.R.B. 765, 767-68 (1985).
 
 
 15
 Since the ALJ in this case found that the General Counsel failed to make an adequate prima facie case, Holo-Krome's explanations of why it acted as it did toward Pace and Rutkauski were not initially at issue. The Board, in turn, was bound by the same rule of law as the ALJ: it should not have evaluated Holo-Krome's rebuttal evidence until it found that the General Counsel had indeed presented an adequate prima facie case.[3] Nevertheless, the Board considered the weakness of rebuttal evidence, chiefly in the form of then-Plant Manager Campbell's testimony, to find that the General Counsel established a prima facie case.
 
 
 16
 The Board cites to appellate cases from other jurisdictions in both its initial opinion and opinion on remand to justify considering rebuttal evidence as part of the prima facie case, but this approach is not only counterintuitive, it negates the established Wright Line rule.[4] We note that the ALJ was in accord with the Board in finding Holo-Krome's rebuttal evidence unpersuasive, Holo-Krome Co. and UAW, Local 376, No. 39-CA-3112 (N.L.R.B., Div. of Judges 1988) slip op. at 6 n. 4, but the ALJ recognized that the General Counsel could not benefit from this weakness until the General Counsel's burden of proof was satisfied. Id.
 
 
 17
 Beyond the misallocation of the burden of proof in this case, we feel compelled to set aside the Board's holding based on the insubstantial nature of the General Counsel's evidence itself.
 
 II. Substantial Evidence
 
 18
 The Board's finding that the General Counsel demonstrated violations of the Act must be supported by "substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' ... Substantial evidence on the record as a whole includes that evidence opposed to the board's view." Local One, Amalgamated Lithographers v. NLRB, 729 F.2d 172, 175 (2d Cir.1984) (citations omitted). The record to be considered in assessing substantiality also includes the ALJ's findings. NLRB v. Donald E. Hernly, Inc., 613 F.2d 457, 462 (2d Cir.1980). Moreover, the Board's evidence in cases in which it does not accept the ALJ's findings "must be stronger than ... in cases where the findings are accepted." NLRB v. Interboro Contractors, Inc., 388 F.2d 495, 499 (2d Cir.1967) (disapproved on other grounds by NLRB v. City Disposal Systems, 465 U.S. 822, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984)). We do not hold that the substantial evidence standard differs in cases in which the Board and ALJ disagree, but a contrary conclusion by an ALJ might indicate that the evidence supporting the Board's decision is less than substantial. Universal Camera Corp. v. NLRB, 340 U.S. 474, 496-97, 71 S.Ct. 456, 468-69, 95 L.Ed. 456 (1951). It is important to note that in this case the ALJ found that the General Counsel did not present sufficient evidence even to prove a prima facie case.
 
 
 19
 The evidence on which the Board relied to find violations of the Act consisted of:
 
 
 20
 A. Worker Campbell's refusal to shake Pace's hand after the Union lost the election (inferring that Campbell was member of management at the time. He was not.);
 
 
 21
 B. Director of Industrial Relations Daniel Wing's alleged hostility to Pace;
 
 
 22
 C. Holo-Krome's shifts and inconsistencies regarding Pace and Rutkauski's work requests; and
 
 
 23
 D. The inference of unlawful motivation drawn from Holo-Krome's failure to give a credible explanation for its failure to hire Pace and Rutkauski.
 
 
 24
 We can examine the substantiality of each of these pieces of evidence in turn.
 
 
 25
 A. The Handshake Incident: Campbell was an ordinary worker, voter and member of the bargaining unit at the time of the Union election, despite the Board's efforts during this litigation to characterize him as a member of management. When Pace tried to shake his hand after the election and said "[N]o hard feelings," Campbell refused to return the gesture and said, "I didn't say that." Nothing in the record indicates why Campbell acted this way. It could have been an indication of his dislike of Pace for entirely unrelated reasons. This alleged evidence of animus is, at best, equivocal. Nor does it provide a basis for attributing any animus to the employer. The Board's second opinion makes much of Campbell's status as plant manager at the time of the hearing, but Campbell's promotion to management occurred two months after this incident.
 
 
 26
 In addition, the incident occurred more than a year before the allegedly discriminatory failure to rehire. See Lucky Stores, 275 N.L.R.B. 1438, 1439 (1985) (termination three months after employee engaged in protected activity was too remote to establish a prima facie case). The General Counsel must show additional evidence that the employer maintained an anti-union attitude when more than a year passed between the protected activity and the allegedly discriminatory actions. See Enterprise Aggregates Corp., 276 N.L.R.B. 71, 71-72 (1985) (failure to pay retirement benefits more than a year after strike).
 
 
 27
 Moreover, although the handshake incident involved only Pace, the Board holds it forth as evidence of employer animus toward Rutkauski as well, a license not warranted by the evidence on the record.
 
 
 28
 B. Wing's Hostility: The General Counsel claims that Holo-Krome demonstrated hostility toward Pace and Rutkauski when Wing, who handled personnel matters, "got mad," according to Pace's testimony, when Pace came to his office and asked about "[T]he job [Holo-Krome was] running in the ad." Wing said he had no time to fool around and threw three or four newspaper ads on the table and asked Pace which ad he was talking about. The job Pace then picked was already taken.
 
 
 29
 The Board opinion states that the two men "got into an argument" over recall rights when Pace said that he wanted his old job back. However, the Board had already decided in June 1986 that company's lack of a recall policy was not an unfair labor practice. Pace himself had testified before the Board on that previous complaint that Holo-Krome had told him that it did not have a recall policy. The General Counsel stipulated that Holo-Krome does not have a policy of recalling employees it has laid off. Furthermore, Pace's testimony on his "argument" with Wing was this: "So I says, 'Well, I'm really here for my old job. ['] He [Wing] says, 'Well, you know, we--that never will happen.' And then he says, 'We don't have any recall rights.' I says, 'Oh; all right.' " That is hardly substantial evidence of an argument, much less of anti-union animus. Wing made a factual statement, based on information Pace clearly knew.
 
 
 30
 In rebuttal, Wing testified that Pace was in fact hostile to him, and that Pace claimed that "any dummy can run the machines ... in this plant." Pace was sarcastic and displayed such a bad attitude that Wing would not have considered him for a job if he had been any other applicant. The ALJ could reasonably have believed that this could explain why Wing said "never" when Pace later asked about his chances of coming back to Holo-Krome.
 
 
 31
 The ALJ, who had the opportunity to observe both Wing and Pace when they testified to their encounter at the plant, chose to credit Wing's account, and not Pace's. The Board should have allowed for "the possible cogency of the evidence that words do not preserve," see NLRB v. James Thompson & Co., 208 F.2d 743, 746 (2d Cir.1953) (L. Hand, J.) (reinstating ALJ's findings after Board reversal), and this Court cannot affirm the Board "unless we can say that the corroboration of this lost evidence could not have been enough to satisfy any doubts raised by the words [of the witnesses]." Id. The Board cannot simply say, without justification, that it chooses to believe people that the ALJ did not believe.
 
 
 32
 C. Holo-Krome's Hiring Practices: Holo-Krome's method of announcing and filling job vacancies was somewhat erratic, but the evidence that this method demonstrated discrimination against Pace and Rutkauski because of their organizing efforts is not at all substantial.
 
 
 33
 When Rutkauski asked Wing on June 26, 1986 about employment, Wing did have an opening that he did not mention to Rutkauski. This tool crib attendant position, however, was advertised in several newspapers for Rutkauski to see. It was also on the second shift and Rutkauski indicated the next day on his application that he wanted only a first shift job. Finally, Rutkauski was a maintenance machinist, not an experienced attendant.
 
 
 34
 Wing placed advertisements for two other jobs the day after Rutkauski came to his office, despite a practice of "word of mouth" advertising, but the company never hired people for either of these positions. The General Counsel does not dispute this. Failure to hire anyone after advertising openings, and later filling positions from other sources does not constitute substantive evidence of animus. See J.A. Croson Co., 274 N.L.R.B. 149, 151-52 (1985).
 
 
 35
 Holo-Krome's rebuttal case is that it automated one position, as suggested by Campbell a year before. The other position was filled by honoring an experienced employee's request to switch shifts. The one other position that became available during the time in question was filled by someone who had experience in that position. Rutkauski testified that he would have needed training to perform the job and Pace was even less skilled than Rutkauski.
 
 
 36
 D. Inferences of Holo-Krome's Motivation: We reiterate that the Board should only have evaluated evidence on Holo-Krome's reasons for its behavior after the Board found the General Counsel established a prima facie case, not as part of the prima facie case itself, as this would shift the burden of proof to Holo-Krome. The evidence on the record as a whole does not support a prima facie case, thus inferences of Holo-Krome's motivation were not proper for the Board to make at that time. Furthermore, Holo-Krome eventually did hire Rutkauski. Perhaps the Board's insistence that it can find implied motivation for not hiring Rutkauski stems from the Board's inexplicable failure to take his rehiring into account in its original decision. The Board already had to issue an Order Correcting Error in this case to remedy this oversight.
 
 
 37
 As for Pace, Holo-Krome sent him a letter in December 1986 notifying him of a job opening. Rutkauski quickly took that job. Holo-Krome also called Pace repeatedly in January 1987, twice leaving messages with his family, and then sent him a certified letter asking him to contact Holo-Krome about a job opportunity. Pace did not contact Holo-Krome until the end of February. He claimed that he was on vacation for an unknown period of time in January in unspecified parts of Canada, by himself, although he had a family at home, and although he was ineligible for vacation time from his current job and in fact was unpaid for the time he was gone. The ALJ found this explanation "fanciful," did "not accept it as being offered seriously," and rejected it as "incredible." Such an assessment of witness credibility must be considered by the reviewing court in assessing substantiality. Donald E. Hernly, 613 F.2d at 462.
 
 
 38
 The Board found the ALJ's concern irrelevant because the Board claimed that the sentences in the letter "I want to talk with you regarding a job opportunity for which you are qualified. If you are interested you should contact me ..." are not a valid employment offer. This interpretation does not appear warranted by the evidence, although we need not reach that question here. Whether the employment offer would be sufficient to discharge Holo-Krome's responsibility if Holo-Krome had violated the Act is irrelevant to the Board's duty to consider the ALJ's credibility determination.
 
 
 39
 While this Court must respect the Board's findings, the Court must set them aside when the record "clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses." Universal Camera, 340 U.S. at 490, 71 S.Ct. at 466, 95 L.Ed. at 468-69. The Board's decision regarding this evidence was in no way justified by the record before it.
 
 
 40
 III. Failure to Follow this Court's Instructions on Remand
 
 
 41
 This Court unequivocally instructed the Board to disregard evidence of discrimination inferred from Holo-Krome's protected statements of opposition to the Union. Without evidence other than Holo-Krome's protected speech to support a conclusion that a violation occurred, the Board's second opinion constitutes little more than a series of rationalizations to reach an unwarranted result. Based on an evaluation of the evidence, supra, it appears that the Board did, indeed, circumvent the intent of this Court.
 
 
 42
 The first two points the Board made it its initial opinion to show "significant evidence" of Holo-Krome's animus concern the company's protected conduct during the election. This suggests that the Board considered this evidence quite significant, not a "relatively minor factor," as it claimed in its second opinion. It appears that the Board followed this Court's instructions only to the extent that it did not claim to be relying on Holo-Krome's protected statements in finding a violation.
 
 IV. Right to Reinstatement
 
 43
 If a violation of the Act occurred, the employer bears the burden of making a specific, unequivocal, and unconditional job offer to satisfy its obligation to reinstate the injured employee. L.A. Water Treatment, Div. of Chromalloy American Corp., 263 N.L.R.B. 244, 246 (1982). Since we find that the General Counsel did not meet its burden of proving a violation, we are not required to reach the reinstatement issue and will not do so.
 
 CONCLUSION
 
 44
 The employer's petition is granted, there was no substantial evidence of violation of law by the employer, the cross-petition of the Board for enforcement is denied and the proceedings against Holo-Krome are dismissed in all respects with prejudice.
 
 
 
 *
 The Honorable Milton Pollack of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 The Board later issued two orders correcting errors to cure defects regarding the remedy
 
 
 [2]
 We relied on 29 U.S.C. § 158(c), which provides in pertinent part that "the expressing of any views, argument or opinion ... shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit."
 
 
 [3]
 The General Counsel believes that Holo-Krome's claim on review that the Board misapplied the Wright Line rule is not properly before this Court. We disagree because the misapplication is intertwined with this Court's necessary inquiry into the substantiality of the evidence on the record as a whole
 
 
 [4]
 The Board does also cite to Abbey's Transportation Services, Inc. v. NLRB, 284 N.L.R.B. 698 (1987), enforced, 837 F.2d 575 (2d Cir.1988), but fails to recognize that although this Court found that the Board's consideration and rejection of the employer's witnesses was proper, their testimony was rejected as part of the employer's rebuttal. The General Counsel had already proven a prima facie case. 837 F.2d at 580-81