17-2882
*NLRB v. Dawn Trucking Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall Courthouse, 40 Foley Square, in the City of New York, on the 21st day of September, two thousand eighteen.

Present:
> ROBERT A. KATZMANN,
> > *Chief Judge*,
> ROBERT D. SACK,
> REENA RAGGI,
> > *Circuit Judges*.

_____

NATIONAL LABOR RELATIONS BOARD,

> *Petitioner*,

>          v.                                                No. 17-2882

DAWN TRUCKING INC.,

> *Respondent*.

_____

For Petitioner:                    JEFFREY W. BURRITT (Elizabeth A. Heaney, Supervisory Attorney, Peter B. Robb, General Counsel, John W. Kyle, Deputy General Counsel, Linda Dreeben, Deputy Associate General Counsel, *on the brief*), National Labor Relations Board, Washington, DC.

1

For Respondent:  RICHARD B. ZISKIN, The Ziskin Law Firm, LLP, Commack, NY.

Petition for enforcement of the August 17, 2017 decision and order of the National Labor Relations Board.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for enforcement is **GRANTED**.

The National Labor Relations Board (Board) petitions for enforcement of its August 17, 2017 order against Dawn Trucking Inc. (Dawn). We assume the parties' familiarity with the underlying facts, the procedural history, the ALJ's and the Board's rulings, and the arguments presented on appeal. We "review the NLRB's legal conclusions *de novo*," but "legal conclusions based upon the Board's expertise should receive, pursuant to longstanding Supreme Court precedent, considerable deference." *NLRB v. Pier Sixty, LLC*, 855 F.3d 115, 122 (2d Cir. 2017), *as amended* (May 9, 2017) (alterations and internal quotation marks omitted). The Board's factual findings are "conclusive" if supported by "substantial evidence." 29 U.S.C. § 160(e); *accord NLRB v. G & T Terminal Packaging Co.*, 246 F.3d 103, 114 (2d Cir. 2001).

The first issue before us is whether substantial evidence supports the Board's conclusion that Dawn unlawfully fired six employees for voting in favor of union representation in violation of Sections 8(a)(3) and (1) of the National Labor Relations Act (NLRA or Act). *See NLRB v. S.E. Nichols, Inc.*, 862 F.2d 952, 957 (2d Cir. 1988) ("Firing an employee for engaging in union activities violates both § 8(a)(1) and (3) of the Act."). We conclude that the Board's finding is adequately supported. Prior to the November 2015 union election, Henry Burey, Dawn's owner and manager, told several employees that he would shut the company down if they voted in favor of the union, and he sent Dawn's employees a flier listing reasons why unionization would be

bad for them. Following the election, Burey told one of Dawn's employees, "Straight across the board, we're done," and ceased assigning any work to Dawn's employees. J. App'x 129.

In late January 2016, Burey called one of his drivers and told them that he was interested in "starting back up his Company" and that he "found out who the terrorists were." J. App'x 131. The Board reasonably concluded that the term "terrorist" was a reference to Burey's pro-union employees who were the driving force behind the vote. Then, on February 16, Burey texted three of his drivers: "I want to start work again @ $27.00 per hour, no union rates no benefits, no prevailing wage Reply by tomorrow if interested 2/17/16 by 4.00 pm." *Id.* From this evidence, the Board could reasonably conclude that Dawn unlawfully fired its employees for voting in favor of union representation.

Dawn's arguments to the contrary are unpersuasive. Dawn first argues that the evidence compels the conclusion that it permanently (and lawfully) ceased all operations. *See Textile Workers Union of Am. v. Darlington Mfg. Co.*, 380 U.S. 263, 268 (1965) (Harlan, *J.*) ("[S]o far as the Labor Relations Act is concerned, an employer has the absolute right to terminate his entire business for any reason he pleases . . . ."). However, the Board's conclusion that Dawn was not permanently shuttered was adequately supported, as Burey handled some trucking assignments for Dawn after the election and attempted to re-hire certain employees.

Dawn argues in the alternative that the evidence conclusively shows that it lawfully locked out its employees, *i.e.*, it refused to assign its regular employees available work. *See Am. Ship Bldg. Co. v. NLRB*, 380 U.S. 300, 317 (1965) (holding that a lockout "for the sole purpose of bringing economic pressure to bear in support of [the employer's] legitimate bargaining position" is lawful). However, for the reasons given above, the Board's conclusion that Dawn

3

fired its employees (and thus did not lock them out) was supported by substantial evidence. Even assuming *arguendo* that Dawn locked out its employees, the lockout would have been unlawful because it was "the result of union activities and was an attempt by [Dawn] to discourage unionization," *NLRB v. Hopwood Retinning Co.*, 98 F.2d 97, 100 (2d Cir. 1938), and therefore was not in support of a "legitimate bargaining position," *Am. Ship Bldg. Co.*, 380 U.S. at 318. Moreover, "a fundamental principle underlying a lawful lockout is that the Union must be informed of the employer's demands, so that the Union can evaluate whether to accept them and obtain reinstatement." *In re Dayton Newspapers, Inc.,* 339 NLRB 650, 656 (2003), *aff'd in part, rev'd in part on other grounds*, *Dayton Newspapers, Inc. v. N.L.R.B.*, 402 F.3d 651 (6th Cir. 2005). Burey did not inform the union in advance of any such lockout.

The next question is whether substantial evidence supports the Board's conclusion that Dawn unlawfully made offers of reinstatement to certain employees conditioned upon their rejection of the union in violation of Sections 8(a)(3) and (1) of the NLRA. *See In re Pratt Towers, Inc.*, 338 NLRB 61, 94 (2002). We conclude that the Board reasonably found that the February 16, 2016 text message, *see supra*, was an offer of reinstatement—Burey wanted to "start work again"—and that the offer was conditioned on rejecting the union—"no union rates no benefits."

The final issue is whether substantial evidence supports the Board's conclusion that Dawn unlawfully dealt directly with certain employees, rather than their exclusive bargaining representative, in violation of Sections 8(a)(5) and (1) of the NLRA. *See Stroehmann Bakeries, Inc. v. NLRB*, 95 F.3d 218, 223 (2d Cir. 1996) ("An employer violates Sections 8(a)(1) and (5) of the Act by dealing directly with union-represented employees concerning any mandatory subject

4

of collective bargaining."). In light of the February 16 text message, we have no trouble concluding that the Board's finding of unlawful direct dealing was adequately supported.

Dawn's argument to the contrary relies on a readily distinguishable decision of the Board, *U.S. Ecology Corp.*, 331 NLRB 223 (2000). In that decision, striking employees contacted their employer and asked about returning to work. In response, the employer sent a letter directly to the employees stating that they could return "for the time being" at the pre-strike wages and benefits. *Id.* at 226. The union accepted this offer the following day. *See id.* Here, by contrast, Dawn's employees did not directly contact Dawn seeking to return to work and the union did not accept the offer. Moreover, the Board could reasonably conclude that the text message did not offer temporary employment pending further bargaining, because Burey had previously made clear that Dawn would not operate as a union shop, and because Burey's text message contained no comparable temporal qualifications.[1]

We have considered Dawn's remaining arguments and find them without merit. Accordingly, the petition for enforcement is **GRANTED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

[1] Dawn also appears to argue that the Board erred in concluding that the February 16 text message did not suspend its backpay obligations. However, as explained above, the Board's conclusion that the text message offer was unlawfully conditioned upon rejection of the union was supported by substantial evidence, and that "offer" would therefore not suspend Dawn's reinstatement or backpay obligations. *See Holo-Krome Co. v. NLRB*, 947 F.2d 588, 595 (2d Cir. 1991) ("If a violation of the Act occurred, the employer bears the burden of making a specific, unequivocal, and unconditional job offer to satisfy its obligation to reinstate the injured employee."). Accordingly, we find no error in this aspect of the Board's decision.