07-1192-ag
Cibao Meat Products v. NLRB

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued: September 10, 2008                                    Decided: November 4, 2008)

Docket No. 07-1192-ag
_____

CIBAO MEAT PRODUCTS, INC.,

*Petitioner*,

—v.—

NATIONAL LABOR RELATIONS BOARD,

*Respondent,*

THE TRUSTEE OF THE UNITE HERE NATIONAL RETIREMENT
AND HEALTH FUNDS

*Intervenor-Respondents.*

_____

B e f o r e : CABRANES, POOLER, and KATZMANN, *Circuit Judges*.

_____

Petition for review of an order of the National Labor Relations Board (NLRB) affirming in part the decision of the Administrative Law Judge that petitioner employer engaged in an unfair labor practice when it unilaterally ceased payments to employee-benefit funds following expiration of the collective-bargaining agreement with the employees' union. Because the NLRB did not err in finding that petitioner's action was not excused by an economic exigency, or that the collective-bargaining agreement was a sufficient written agreement pursuant to which petitioner could have continued payments, we deny the petition for review and grant respondent's application for enforcement of the NLRB order.

Counsel for Petitioner: IRENE DONNA THOMAS, Thomas & Associates, Brooklyn, NY.

Counsel for Respondent: KELLIE ISBELL, Attorney (David Habenstreit, Supervisory Attorney, and Ronald Meisburg, General Counsel, *of counsel*), National Labor Relations Board, Washington, DC.

Counsel for Intervenor-Respondent: RONALD E. RICHMAN, (Scott A. Gold and Max Garfield, *of counsel*) Schulte Roth & Zabel LLP, New York, NY.

---

KATZMANN, *Circuit Judge*:

In this case, petitioner-appellant Cibao Meat Products, Inc. seeks review of an order of the respondent-appellee National Labor Relations Board (NLRB) holding that Cibao engaged in an unfair labor practice when it ceased payments to employee-benefit funds after the expiration of its collective-bargaining agreement with its employees' union. Cibao argues that it was excused from making those payments because the union's actions in seeking to review certain company records created an "economic exigency," and that, due to the expiration of the collective-bargaining agreement and the benefit funds' merger into other larger funds, additional contributions would have constituted payments to the union without a "written agreement," in violation of § 302 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 186. We write today principally to clarify that an expired collective-bargaining agreement does constitute a written agreement under which an employer may legally continue benefit payments under § 302(c)(5)(B) of the LMRA. Indeed, under § 8(a)(5) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(5), absent an impasse in negotiations, an employer's failure to continue making such payments constitutes an unfair labor practice. We therefore deny Cibao's petition for review and grant the NLRB's application for enforcement of its order.

2

Petitioner Cibao Meat Products, Inc. is a Bronx-based meat-processing company. In March 2000, the NLRB certified Local 169 UNITE to serve as the bargaining representative for Cibao's production employees, mechanics, and drivers. On March 19, 2001, Local 169 and Cibao signed a collective-bargaining agreement, which was set to expire on February 28, 2005. Articles 18 and 19 of the collective-bargaining agreement governed payments of employee pension and insurance benefits, respectively. Article 18 provided, in pertinent part, that Cibao "shall be a contributing employer to the Amalgamated Washable Clothing, Sportswear & Allied Industries Fund – The Pension Plan of Local 169," and that Cibao "shall, at the request of the Union, allow the Union or its representative to examine and copy [Cibao's] payroll records of bargaining unit employees as to insure compliance with this section of the Agreement." Similarly, Article 19 provided that Cibao "shall be a contributing employer to the Amalgamated Washable Clothing, Sportswear & Allied Industries Fund – Health and Welfare Plan," and contained an identical provision requiring Cibao to allow a Union representative to "examine and copy" Cibao's payroll records. Both provisions also specified that such benefits would be paid to the Funds (collectively the "Washable Funds") according to the Plan Descriptions "as established by the Trustees." The Washable Funds were multi-employer funds governed by an Agreement and Declaration of Trust, which gave the Funds' trustees the "right at any time and from time to time to modify, change, amend or terminate to any extent any or all of the terms and provisions of the Plan."

Storm clouds began to loom in September 2004, when the Washable Funds sent a representative to audit Cibao's payroll records, as authorized by the collective-bargaining agreement. Upon reviewing the payroll records, the auditor informed the Company's vice

3

president, Lutzi Vielf Isidor, that one employee did not appear to be receiving the correct amount of pay. Isidor responded that the payroll formula was correct. The auditor demanded Cibao's tax records and other documents to monitor compliance with the fund-contribution provisions of the agreement, and Cibao refused, purportedly because Isidor believed that the documents were unrelated to an audit of the pension and insurance benefits under the Washable Funds.

In January 2005, the Union and Cibao held their first meeting to discuss the future of the collective-bargaining agreement, which was set to expire on February 28, 2005. Present at this meeting were, among others, Alexandre Fuentes, the chief negotiator for the Union, and Heinz Vieluf, then the president of Cibao. Vieluf testified before the Administrative Law Judge in this case that Fuentes made a proposal, but Vieluf responded that "we were looking to stopping the payments when the contract terminates. Because we were looking at other plans." A second meeting was held on February 11, 2005, at which apparently Vieluf made a counterproposal involving Cibao's establishing its own benefit plans, and again intimating that it planned to discontinue payments to the Washable Funds at the expiration of the current agreement. After the meeting, Fuentes asked Vieluf if he would be amenable to simply extending the whole collective-bargaining agreement. Vieluf responded that Fuentes should put the proposal in writing, but before Fuentes could, on February 16, 2005, Vieluf sent a letter to the Union informing it that "after careful consideration, Cibao will not agree to extend the current agreement past February 28, 2005. We are anticipating that the parties, negotiating in good faith, can reach an appropriate agreement." Cibao ceased payments to the Washable Funds following the expiration of the collective-bargaining agreement on February 28, 2005, and has not made any such payments since.

Soon after Cibao ceased contributions, on April 1, 2005, the Washable Funds merged with the UNITE National Insurance Fund and the UNITE National Retirement Fund (collectively the "National Funds"). According to the Funds, the merger was necessary to ensure the sufficiency of funds to cover employee benefits. The National Funds informed Cibao of the merger by letter dated June 7, 2005. The letter states, in part, that "the merger does not change the contribution rate as referenced in the collective bargaining agreement between UNITE-HERE and Cibao Meat Products, Inc. Additionally, the employee benefit plan will remain unchanged at this time."

Negotiations on a new collective-bargaining agreement between the parties continued throughout 2005 until early 2006. In a letter dated February 3, 2006, Cibao asserted to the Union that the parties had reached an impasse. The Union disputed this assertion in its reply letter, dated February 7, 2006, claiming that further negotiations might yet solve remaining disputes and expressing a desire to meet further. But negotiations apparently did not resume after this exchange.

In the meantime, the parties litigated before an Administrative Law Judge (ALJ) the question of whether Cibao was justified in stopping payments to the National Funds. Cibao argued below, as it does in this Court, that the auditor's actions constituted an "economic exigency" that excused payment to the National Funds, and that, in any event, any such payments would be illegal because of the lack of a valid "written agreement" between Cibao and the National Funds. The ALJ conducted a hearing on June 5, 2006, and issued an opinion on September 25, 2006. In her opinion, the ALJ held that Cibao was unjustified in stopping payments to the benefit funds, but only until February 2006, when, in her view, the parties reached an impasse. Both parties filed exceptions to the ALJ's rulings with the NLRB. On

5

March 6, 2007, the NLRB issued an order affirming the ALJ's decision with respect to Cibao's unilateral discontinuation of benefit payments, but reversing her finding that the parties reached an impasse on February 10, 2006. The Board ruled that Cibao was therefore liable for its unpaid contributions to the National Funds from the expiration date of the collective-bargaining agreement through the present, subject to a later compliance proceeding that will determine if and when the parties reached an impasse. Cibao now appeals the NLRB's decision affirming the ALJ's ruling that stopping payments to the National Funds was an unfair labor practice.

DISCUSSION

*Standard of Review*

"[W]e uphold the NLRB's findings of fact if supported by substantial evidence and the NLRB's legal determinations if not arbitrary and capricious." *Long Island Head Start Child Dev. Servs. v. NLRB*, 460 F.3d 254, 257 (2d Cir. 2006) (internal quotation marks and citation omitted). "Our review is deferential: 'This court reviews the Board's legal conclusions to ensure they have a reasonable basis in law. In so doing, we afford the Board a degree of legal leeway.'" *Id.* (quoting *NLRB v. Caval Tool Div., Chromalloy Gas Turbine Corp.*, 262 F.3d 184, 188 (2d Cir. 2001) (internal quotation marks omitted)). Moreover, the NLRB's answer to the particular question of whether an employer's conduct constitutes a refusal to bargain is "entitled to considerable deference." *Ford Motor Co. v. NLRB*, 441 U.S. 488, 495 (1979).

*Whether Economic Exigency Excused the Discontinuation of Benefits*

Section 8(a)(5) of the NLRA makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). Courts have long held that, absent an impasse in negotiations, "an employer's unilateral change in conditions of employment under negotiation is . . . a violation of § 8(a)(5), for it is a

6

circumvention of the duty to negotiate which frustrates the objectives of § 8(a)(5) much as does a flat refusal." *NLRB v. Katz*, 369 U.S. 736, 743 (1962); *accord NLRB v. WPIX, Inc.*, 906 F.2d 898, 901 (2d Cir. 1990). Along these lines, an employer may not cease paying employee benefits after the expiration of a collective-bargaining agreement unless the parties have reached an impasse. *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 26 (2d Cir. 1988).

Here, Cibao does not dispute that, in general, ceasing payment of benefits during renegotiation of an expired collective-bargaining agreement violates § 8(a)(5) of the NLRA. Nor does Cibao suggest that it had reached an impasse with the Union when it stopped making payments to the Washable Funds. Rather, Cibao attempts to rely on the rare exception for "economic business emergencies." The NLRB has held that there is an exception to the general bar against unilateral changes in the conditions of employment prior to negotiations reaching an impasse under "circumstances which require implementation at the time the action is taken or an economic business emergency that requires prompt action." *RBE Elecs. of S.D., Inc.*, 320 N.L.R.B. 80, 81 (1995); *see also* Robert A. Gordon & Matthew W. Finkin, *Basic Text on Labor Law: Unionization and Collective Bargaining* 606 (2d ed. 2004). But the NLRB has also noted, and we agree, that there is a "heavy burden" upon an employer trying to establish application of the exception, and that the "Board has limited its definition of these considerations to extraordinary events which are an unforeseen occurrence, having a major economic effect [requiring] the company to take immediate action. Absent a dire financial emergency, the Board has held that economic events such as loss of significant accounts or contracts, operation at a competitive disadvantage, or supply shortages do not justify unilateral action." *RBE Elecs.*, 320 N.L.R.B. at 81 (internal quotation marks and footnotes omitted); *see also Duffy Tool & Stamping, L.L.C. v. NLRB*, 233 F.3d 995, 997 (7th Cir. 2000) (describing the exception as

7

requiring immediate action in order to "stave off disaster"); *Angelica Healthcare Servs. Group, Inc.*, 284 N.L.R.B. 844, 853 (1987) (loss of 14% of revenue is not an exigency); *Triple A Fire Protection, Inc.*, 315 N.L.R.B. 409, 414-15 (1994) ("[O]perating at a competitive disadvantage does not necessarily equate to an economic emergency . . . .").

Cibao argues that there was an economic exigency in this case because the auditor wanted access to the company's tax and business records to search for wage-and-hour violations, and Cibao did not believe that the auditor had power under the collective-bargaining agreement to conduct an audit for this purpose. Whether or not the auditor's actions were improper, and there is no evidence that they were, *cf. Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 571 n.12 (1985), it is hard to see how they constituted an economic exigency, especially given that Cibao continued to make benefit payments to the Funds for four months after the supposedly improper audit. Certainly, if Cibao had truly believed that the auditor's actions posed an imminent threat to its business, there were alternatives at its disposal to confront the issue other than ceasing benefit payments. Given the "heavy burden" on the employer to demonstrate the application of the exigency exception, we see no reason to disturb the NLRB's finding that no such exigency existed here.

*Written-Agreement Requirement of LMRA § 302(c)(5)(B)*

Cibao argues that payments to the National Funds would be illegal under § 302 of the LMRA, 29 U.S.C. § 186. The statute makes it "unlawful for any employer . . . to pay, lend, or deliver . . . any money or other thing of value" to any employee representative or labor organization, unless certain exceptions apply. 29 U.S.C. § 186(a). One such exception, found in § 302(c)(5), allows such payments to a trust fund for the benefit of employees if, among other requirements not at issue here, "the detailed basis on which such payments are to be made is

8

specified in a written agreement with the employer." 29 U.S.C. § 186(c)(5)(B). As we have noted, the statute "was principally intended to protect the collective bargaining process by eliminating the corruptive influence of side payments by employers to union representatives." *Haley v. Palatnik*, 509 F.2d 1038, 1040 (2d Cir. 1975); *see also* S. Rep. No. 86-187, at 13 (1959) (noting that the purpose of § 302 is to make the LMRA "applicable to all forms of extortion and bribery in labor-management relations").

Today, we join several of our sister circuits in holding that an expired collective-bargaining agreement satisfies the written-agreement requirement of § 302(c)(5)(B). *See, e.g.*, *Alaska Trowel Trades Pension Fund v. Lopshire*, 103 F.3d 881, 883 (9th Cir. 1996); *Denver Metro. Ass'n of Plumbing, Heating, Cooling Contractors v. Journeyman Plumbers & Gas Fitters Local No. 3*, 586 F.2d 1367, 1373 (10th Cir. 1978); *see also Gariup v. Birchler Ceiling & Interior Co.*, 777 F.2d 370, 375 (7th Cir. 1985) (finding that the written agreement need not be a signed, unexpired collective-bargaining agreement). This follows from both the requirement that an employer maintain the status quo following expiration of a collective-bargaining agreement, and that such continued payments under an expired collective-bargaining agreement do not implicate the purpose of § 302.

Cibao argues that even if an expired collective-bargaining agreement constitutes a written agreement under § 302, there was no written agreement between Cibao and the National Funds. Rather, in Cibao's view, its written agreement was with only the Washable Funds, and it has no such agreement with the National Funds, the Washable Funds' post-merger successor. This argument need not long detain us. Articles 18 and 19 of the collective-bargaining agreement required that Cibao make contributions to the Washable Funds according to plans "as established by the Trustees" of the Funds. The Funds themselves were governed by an Agreement and

Declaration of Trust granting the Trustees the "right . . . to modify, change, amend or terminate to any extent any or all of the terms and provisions of the Plan." The Declaration of Trust further provided that "[t]he decision of the Trustees in any matter administering the affairs of this Trust shall be final and binding on the Fund, the Employees, any applicant or claimant for benefits, the Employer and the Union." As such, under the collective-bargaining agreement and the Funds' governing documents, the Trustees had the right both to change the Washable Funds' name and to merge them into the National Funds. The merger of the Washable Funds into the National Funds in no way relieved Cibao of its obligations to contribute to the National Funds when the collective-bargaining agreement allowed the Trustees to effectuate the merger. *See DeVito v. Hempstead China Shop*, 38 F.3d 651, 654 (2d Cir. 1994) (finding that the employer remained obligated to make contributions to a successor fund, after a merger, when the terms of the collective-bargaining agreement and the declaration of trust authorized the trustees to make the merger decision). Unlike *Moglia v. Geoghegan*, 403 F.2d 110, 117-18 (2d Cir. 1968), on which Cibao relies, in this case there was a valid, signed collective-bargaining agreement which granted the Funds' trustees authority to effect the merger. Therefore, the collective-bargaining agreement required continued payments to the National Funds after the merger, and those payments were not precluded by § 302 of the LMRA.

CONCLUSION

For the foregoing reasons, we **DENY** Cibao's petition for review and **GRANT** the NLRB's application for enforcement of its March 6, 2007 order.