08-3887-ag (L); 08-3888-ag (con)
National Labor Relations Board v. Bloomfield Health Care Center

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 14th day of April, two thousand ten.

PRESENT:

> BARRINGTON D. PARKER,
> PETER W. HALL,
> GERARD E. LYNCH,
> > *Circuit Judges*.

_____

NATIONAL LABOR RELATIONS BOARD,
> *Petitioner,*

> v.    No. 08-3887-ag(L)
>       No. 08-3888-ag(Con)

BLOOMFIELD HEALTH CARE CENTER,
> *Respondent.*

_____

FOR PETITIONER:    JULIE BROIDO, Supervisory Attorney, Labor Relations Board, Washington, D.C. (Ronald Meisburg, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Linda Dreeben, Deputy Associate General Counsel, Christopher W. Young, Attorney, on the brief).

1

FOR RESPONDENT:     JEFFREY R. BABBIN, GREGORY A. BROWN, Wiggin & Dana LLP, New Haven, CT.

Appeal from the National Labor Relations Board.  **UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED**, that the National Labor Relations Board's petitions for enforcement are **GRANTED**.

Petitioner National Labor Relations Board (the "Board" or "NLRB") seeks to enforce two orders against Respondent Bloomfield Health Care Center ("Bloomfield").  In the first order, dated March 20, 2008 and reported at 352 NLRB 252 (2008), the NLRB found that Bloomfield violated Sections 8(a)(1), (3) and (5) of the National Labor Relations Act (the "Act") (29 U.S.C. §§ 151, 158(a)(1), (3) and (5)), based on Bloomfield's conduct before, during, and after an NLRB-conducted organizing election.  In the second order, issued on June 27, 2008 and reported at 352 NLRB No. 94 (2008), the NLRB found that Bloomfield violated Sections 8(a)(1) and (5) of the Act by refusing to bargain with the New England Health Care Employees Union, District 1199, SEIU, AFL-CIO (the "Union").  We assume the parties' familiarity with the facts, procedural context, and specification of appellate issues.

1.     **Jurisdiction & Standard of Review**

This Court has jurisdiction "to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board."  29 U.S.C. § 160(f); *see also KBI Sec. Serv., Inc. v. NLRB*, 91 F.3d 291, 295 (2d Cir. 1996).

The Board's findings of fact are conclusive if "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e).  "We may not 'displace the Board's choice

between two fairly conflicting views, even though we would justifiably have made a different choice had the matter been before us *de novo*.'" *NLRB v. G & T Terminal Packaging Co.*, 246 F.3d 103, 114 (2d Cir. 2001) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) (alterations omitted)). We should reverse a factual finding "only . . . if, after looking at the record as a whole, we are left with the impression that no rational trier of fact could reach the conclusion drawn by the Board." *NLRB v. Katz's Delicatessen of Houston St., Inc.*, 80 F.3d 755, 763 (2d Cir. 1996) (internal quotation marks omitted). We should uphold the Board's legal determinations "if not arbitrary and capricious." *Cibao Meat Prods., Inc. v. NLRB*, 547 F.3d 336, 339 (2d Cir. 2008) (internal quotation marks omitted).

## 2.    Discussion

As an initial matter, the March 2008 NLRB decision found that Bloomfield committed an unfair labor practice by "interrogating" certain employees about a union meeting that occurred in July 2006. In its brief to this Court, Bloomfield states that it "is not addressing that aspect of the Decision in this brief." Because Bloomfield has not challenged this portion of the Board's decision, Petitioner is entitled to summary affirmance and enforcement of the portion of the decision pertaining to the interrogation. *See NLRB v. Springfield Hosp.*, 899 F.2d 1305, 1308 n.1 (2d Cir. 1990).

Bloomfield next challenges the Board's decision to overrule its election objections and certify the Union. Bloomfield, in seeking to overturn the election, bears a "heavy burden." This Court, in *NLRB v. Arthur Sarnow Candy Co., Inc.*, 40 F.3d 552 (2d Cir. 1994), stated as follows:

> In reviewing representation elections, this Court has stated that
> "[t]he conduct of representation elections is the very archetype of a

3

purely administrative function, with no *quasi* about it, concerning which courts should not interfere save for the most glaring discrimination or abuse." [citing cases]. Accordingly, "when reviewing a request to overturn a Board decision refusing to set aside an election, we are limited to the narrow question of whether the Board abused its discretion in certifying the election." *Rochester Joint Bd., Amalgamated Clothing & Textile Workers Union v. NLRB*, 896 F.2d 24, 27 (2d Cir. 1990).

The party objecting to an election bears the burden of presenting evidence demonstrating that the Board abused its discretion in certifying the election. *See, e.g.*, *NLRB v. Mattison Mach. Works*, 365 U.S. 123, 123-24 [] (1961) (per curiam); *NLRB v. Black Bull Carting Inc.*, 29 F.3d 44, 46 (2d Cir. 1994) (per curiam) ("A party seeking to overturn an election on the ground of a procedural irregularity has a heavy burden.")[citing cases]. Moreover, in reviewing an election certification, the Court is to view the NLRB's factual findings as conclusive unless they are not supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 160(e); *Lipman Motors*[*, Inc. v. NLRB*, 451 F.2d 823], 827, n. 8 [(2d Cir. 1971)] (citations omitted).

*Id.* at 556. Moreover, the *Black Bull* Court held that: "The presence of [a procedural] irregularity is not in itself sufficient to overturn an election. Nor is it sufficient for a party to show merely a 'possibility' that the election was unfair. Rather, the challenger must come forward with evidence of actual prejudice resulting from the challenged circumstances." *Black Bull Carting Inc.*, 29 F.3d at 46 (internal citations omitted).

Bloomfield's first election objection relates to behavior during the election by a Union supporter named Winsome Kitson ("Ms. Kitson"). Although the parties disagree about the characterization of Ms. Kitson's behavior, at worst, Ms. Kitson shouted at and was verbally hostile towards Penni Martin ("Ms. Martin"), the Administrator of Bloomfield. Neither the ALJ nor the Board determined that this shouting rose to the level of interfering with employees'

4

exercise of free choice or created a general atmosphere of fear and reprisal, and nothing in the record compels a contrary conclusion.  Accordingly, it does not make a difference whether Ms. Kitson was a party to the Union or a third party.  The NLRB's findings are supported by "substantial evidence on the record," and Bloomfield cannot meet its "heavy burden" to have us overturn the election.

Bloomfield's second election objection relates to a letter supporting the Union signed by several Connecticut legislators.  While Bloomfield asks us to overturn the election based on the coercive effects of the letter, this Court notes that the letter was not written on the Connecticut legislators' official letterhead or on NLRB letterhead, contained no mention of the Board or Medicaid funding (indeed, there is no mention that the signers even have authority over health care funding), and contained no threats, explicit or otherwise, of potential consequences should the Union lose the election.  The letter, on its face, is not susceptible of Bloomfield's interpretation that employees would have felt coerced into voting for the Union.  *See, e.g.*, *Greater Hartford Ass'n for Retarded Citizens*, Case No. 34-RC-2157 (NLRB May 9, 2006) (unreported) (objection overruled with respect to letter nearly identical to the one in the instant case except that the *Greater Hartford* letter was arguably more objectionable in that it contained a reference to funding); *Chipman Union, Inc.*, 316 NLRB 107 (1995) (letter from Congresswoman on official stationery found not to be official institutional endorsement by the Federal Government of a vote for the union in a representation election); *Columbia Tanning Corp.*, 238 NLRB 899 (1978) (noting a concern that employees viewed a letter "as an official

document from a person in Government *with authority over labor matters*" (emphasis added)). Accordingly, Bloomfield again cannot meet its "heavy burden" to have us overturn the election.

Bloomfield next objects to the Board's finding that it committed unfair labor practices in disciplining Ms. Kitson. Regarding the exclusion of Ms. Kitson from the premises—allegedly for violating Bloomfield's *ad hoc* rule against off-duty employees being on the premises—the ALJ and the Board weighed the evidence and found that Ms. Martin's decision to exclude Ms. Kitson was related to Ms. Kitson's pro-Union opinions and Ms. Martin's unwillingness to allow Ms. Kitson to speak to other employees gathered in the Bloomfield recreation room. This decision was fact-specific and based on credibility determinations. As such, it falls squarely within the discretion of the lower tribunals. This Court, after looking at the record as a whole, does not conclude that no rational trier of fact could reach the conclusion drawn by the Board. *Katz's Delicatessen*, 80 F.3d at 763.

Regarding the suspension of Ms. Kitson, Bloomfield's objections similarly must fail as the decision falls within the sound discretion of the ALJ and the Board. *Wright Line, A Division of Wright Line, Inc.*, 251 NLRB 1083, 1083-88 (1980)), *enforced*, 662 F.2d 899 (1st Cir. 1981). Under the two-step *Wright Line* test, as clarified by the Supreme Court in *Director, Office of Workers' Compensation Programs v. Greenwich Collieries*, 512 U.S. 267, 276-78 (1994), the Board's General Counsel must first present evidence that proves that protected conduct was a motivating factor in the discharge. The NLRB met this prong because Ms. Kitson's suspension stemmed directly from her protected activity, to wit, having pro-Union opinions. It next fell to Bloomfield to demonstrate by a preponderance of the evidence that it would have reached the

6

same decision absent the protected conduct. This conclusion is supported by ample evidence in the record and, therefore, must be affirmed. 29 U.S.C. § 160(e). The ALJ "clearly undert[ook] a *Wright Line* analysis," and the Board appropriately adopted the ALJ's decision. *In re Am. Gardens Mgmt. Co.*, 338 NLRB 644, 645 (2002).

Finally, the Board's fact-specific determinations that Bloomfield violated Sections 8(a)(1) & (5) of the Act by eliminating a unit job and changing employees' work schedules without notifying and bargaining with the Union must similarly stand. The Supreme Court, in *Litton Financial Printing Division v. NLRB*, 501 U.S. 190 (1991), held that an employer commits an unfair labor practice if, without bargaining to impasse, it effects a unilateral change of an existing term or condition of employment. *Id.* at 198 (citing *NLRB v. Katz*, 369 U.S. 736 (1962)).

Bloomfield argues that elimination of the unit job had a *de minimis* impact on its employees. The Board's fact-heavy determination to the contrary must be given due deference and, in any event, is supported by several cases. *See, e.g.*, *Finch, Pruyn & Co.*, 349 NLRB 270, 277 (2007) (eliminating a unit position and reassigning that person's duties necessitated bargaining even if elimination was due to economic concerns); *Flambeau Airmold Corp.*, 334 NLRB 165, 171-72 (2001) (employer violated Section 8(a)(5) by permanently unilaterally assigning employee to machine operation); *Rangaire Acquisition Corp.*, 309 NLRB 1043, 1043 (1993) (single denial of a fifteen minute break involves a material, substantial, and significant change in unit employees' terms and conditions of employment). *Litton Financial* dictates that Bloomfield should have negotiated this change with the Union. *See Litton Fin.*, 501 U.S. at 198. With respect to the requirement that two employees begin working on weekends, ample

precedent holds that an employer's established past practice can become an implied term and condition of employment. *See, e.g.*, *Finch, Pruyn & Co Inc.*, 349 NLRB at 277 n.31; *In re Post-Tribune Co.*, 337 NLRB 1279, 1280-81 (2002). The two employees whose schedules were unilaterally changed had come to accept their schedules. Accordingly, the Board was well within its discretion to find that Bloomfield was required to negotiate with the Union before altering these employees' work schedules. *See Litton Fin.*, 501 U.S. at 198.

**3.    Conclusion**

For the foregoing reasons, the NLRB's petitions for enforcement are **GRANTED**.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8