18-1509 (L)
*Mexican Radio Corporation v. National Labor Relations Board*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of October, two thousand nineteen.

PRESENT: DENNIS JACOBS
ROBERT D. SACK
PETER W. HALL

-----------------------------------------------------------------------

MEXICAN RADIO CORPORATION,

*Petitioner-Cross-Respondent,*

v.                                                                  No. 18-1509 (L)
                                                                        18-1963 (XAP)

NATIONAL LABOR RELATIONS BOARD,

*Respondent-Cross-Petitioner.*

-----------------------------------------------------------------------

FOR PETITIONER-CROSS-RESPONDENT:   DANA L. SALAZAR (Kathleen L. McAchran, *on the brief*), Salazar and Erikson, LLP, East Greenbush, NY.

FOR RESPONDENT-CROSS-PETITIONER:   MICHAEL R. HICKSON (Peter B. Robb, John W. Kyle, Linda Dreeben, and Elizabeth Heaney, *on the brief*), National Labor Relations Board, Washington, DC.

1

Appeal from a decision and order of the National Labor Relations Board ("Board").

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**, and the cross-petition for enforcement is **GRANTED**.

Mexican Radio Corporation ("Company") petitions for review, and the Board cross-petitions for enforcement, of the Board's decision and order entered on April 20, 2018 determining that the Company violated Section 8(a)(1) of the National Labor Relations Act ("NLRA") by reprimanding and discharging four employees based on their protected concerted activity. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

## I.

The following facts are undisputed. At all relevant times, the Company operated a restaurant in New York City, where Tangni Fagoth, Stephanie Garcia, Nadgie Santana, and Juliana Palomino (collectively, "Employees") were employed as waitresses. In August 2015, the Company hired Theodora Alfredou as the new general manager of the restaurant. The Employees and other servers immediately expressed concerns about Alfredou's disrespectful and demeaning treatment of employees. The Employees repeatedly lodged complaints about Alfredou's conduct and unsanitary conditions at the restaurant with Steve Morgan, the Company's director of operations, as well as the restaurant's owners. Perceiving no improvement in the conditions, the Employees contacted the New York City Department of Health & Mental Hygiene, which angered management.

On October 29, 2015, bartender/server Annette Polanco sent a group email to the

2

owners, managers, and certain employees announcing her resignation and complaining about Alfredou's treatment, unsanitary working conditions, and management's failure to respond to employees' concerns. The email encouraged the remaining employees to "stand up for their rights." Supp. App. 700. It also attacked the owners' business practices, made allegations of tax fraud, accused Alfredou of having improper designs on the porters, and contained obscenities.

The Employees discussed Polanco's email among themselves and individually used "reply all" to respond. Fagoth replied: "Wow Anette, gracias. Thank you for standing up for us. We will miss you." *Id.* at 690. Garcia replied: "Just finish[ed] reading and I agree. Sad that things have to be this way[.]" *Id.* at 686. Palomino replied: "I agree . . . 100% as well." *Id.* at 698. Santana replied: "I'm glad you said what you felt was right. I understand your point of view 100%. Thank[] you for being [a] voice for us all." *Id.* at 694.

Over the course of the next two days, all four of the Employees were fired. The Company issued reprimands memorializing the reasons why the Employees were fired. Alfredou appears to have issued the first set of reprimands, each of which stated that the discharged employee demonstrated "insubordination" when she replied to an email containing "false accusations concerning both management and ownership" and "inappropriate language." *Id.* at 737–39. Morgan wrote the second set of reprimands. Each of these reprimands stated:

> On 10/29/15 Netty Polanco sent out an e-mail to all of the upper management, ownership, store manager and selected employees of our NYC location. In this e-mail she used foul language, insulted people and wrote about untruths in a very demeaning and negative manner. She undermined the credibility of the management and company in a disparaging way. [Employee] replied to the e-mail in support of Netty. This is insubordination and will not be tolerated.

3

*Id.* at 792–95.  Following that statement, each of Morgan's reprimands contained several sentences detailing the particular employee's conduct.  Morgan's reprimands for Garcia and Palomino stated that the "outcome" was job abandonment, while his reprimands for Fagoth and Santana stated that they were "terminated for insubordination."  *Id.*

## II.

Following a seven-day trial, the administrative law judge ("ALJ") determined that the Employees had engaged in protected concerted activity and that their email replies were not so opprobrious as to lose the protection of the NLRA.  The ALJ found that the discharges were motivated by the Employees' supportive replies to Polanco's email, rejecting the Company's assertion that the Employees were fired because they afterwards refused to meet with management or abandoned their jobs.  The Board adopted the ALJ's findings and recommended order, as modified by the Board's identification of an additional violation of Section 8 by the Company that is not at issue here.

## III.

"We uphold the NLRB's findings of fact if supported by substantial evidence and the NLRB's legal determinations if not arbitrary and capricious."  *Cibao Meat Prods., Inc. v. NLRB*, 547 F.3d 336, 339 (2d Cir. 2008) (alteration and quotation marks omitted).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *NLRB v. Pier Sixty, LLC*, 855 F.3d 115, 121–22 (2d Cir. 2017) (internal quotation marks omitted).

## IV.

The Company principally argues that the Employees forfeited the protection of the

NLRA due to the opprobrious contents of Polanco's email. The Company contends that *Atlantic Steel Co.*, 245 NLRB 814 (1979), governs our analysis of this issue. The Board has typically applied the *Atlantic Steel* factors to "direct communications, face-to-face in the workplace, between an employee and a manger or supervisor," finding *Atlantic Steel*'s "place of the discussion" factor to be inapplicable to "employees' off-duty, offsite use of social media." *Three D, LLC*, 361 NLRB 308, 311 (2014), *aff'd*, 629 F. App'x 33 (2d Cir. 2015). In recent cases involving employee comments made in a nonwork forum, such as on social media, the Board has applied a totality of the circumstances test instead of the *Atlantic Steel* factors. *Pier Sixty*, 855 F.3d at 123 (citing, *inter alia*, *Pier Sixty, LLC*, 362 NLRB 505, 506 (2015)). The Board argues that regardless of which analytical framework applies, the Employees' conduct was not so opprobrious as to lose the protection of the NLRA.

We agree with the Board. Even under the *Atlantic Steel* factors, the Employees are entitled to NLRA protection. "To determine whether an employee loses the Act's protection under *Atlantic Steel*, the Board balances four factors: (1) the place of the discussion; (2) the subject matter of the discussion; (3) the nature of the employee's outburst; and (4) whether the outburst was, in any way, provoked by the employer's unfair labor practices." *Three D, LLC*, 361 NLRB at 311.

The Company argues that the "place of discussion" factor weighs against protection because in cases involving modern communication technology, the "pertinent question" is "whether or not the comments were made in front of other employees." Petitioner Br. 14. Although the Employees' email replies were made "in front of" other employees, their replies are not comparable to the outburst on the floor of the plant in *Atlantic Steel* because the email

5

chain was limited to certain individuals and did not unfold in the workplace. To hold that the presence of a limited group of employees on an email chain weighs against a finding of NLRA protection would be antithetical to the nature of concerted action. Thus, to the extent the "place of discussion" factor is applicable, it weighs in favor of NLRA protection.

Second, the Company contends that the "subject matter of discussion" factor weighs against protection because the Employees' replies were not "immediate outbursts made in the heat of the moment, but rather were sent hours later." Petitioner Br. 15–16. That argument is meritless. The second *Atlantic Steel* factor does not turn on the timing or emotional tenor of an employee's outburst. Polanco's email restated the concerns animating the Employees' ongoing dialogue with management, including unsanitary conditions and disrespectful treatment by Alfredou, even referencing that dialogue. *See, e.g.*, Supp. App. 699 ("We [n]aively told Steve [Morgan] all of our concerns from day one and he did absolutely nothing."). The subject matter of the email discussion therefore weighs in favor of protection.

Third, the Company argues that the "nature of the employee's outburst" weighs in its favor because "[t]he language used in Polanco's email and adopted by [Employees] went well beyond 'opprobrious.'" Petitioner Br. 17. The Company cites no authority to support the proposition that Polanco's language should be attributed to the Employees. NLRB decisions indicate that it would be inappropriate to do so. *See Laguardia Assoc., LLP*, 357 NLRB 1097, 1099 (2011) (ALJ must "account[] for material differences in the nature of the employees' conduct" in evaluating whether action involving multiple employees forfeits NLRA protection); *Three D*, 361 NLRB at 312 (clarifying that employees who liked and commented on the Facebook post of another employee would not "have lost the protection of the Act

6

merely by participating in an otherwise protected discussion in which other persons made unprotected statements"). The Board appropriately focused on the language of the Employees' replies, noting that the Employees "did not add to the email with any negative comments of their own," "did not describe their feelings or animosity toward the manager and owners," and "never cursed or made any derogatory comments toward the [Company] in their responses." Sp. App. 21. The third factor weighs in favor of protection.

Fourth, the Company conclusorily asserts that "[t]here is no evidence to suggest that any unfair labor practice provoked either the email or the [Employees'] actions following it." Petitioner Br. 18. Not so. The Board determined that the emails were provoked, at least in part, by Alfredou's remark that "[i]f you guys don't like how things [are] working here, then you can go look for another job, you can leave," which remark amounted to an unfair labor practice because it "implicitly threaten[ed] discharge" and "clearly had the tendency to restrain and coerce employees in the exercise of their Section 7 rights." Sp. App. 19; *see id.* at 21. Such a threat constitutes an unfair labor practice when made in response to an employee's protected grievance. *See In Re Equip. Trucking Co., Inc.,* 336 NLRB 277, 277 (2001) (vice president unlawfully threatened discharge when he responded to an employee's pro-union statements by stating that the company's president would run the company "any way she wanted, and if [the employee] didn't like it, find another job").

The Company further argues, as a factual matter, that the Employees were not fired for responding to Polanco's email, but rather, for "refus[ing] to speak with the [o]wners and walk[ing] out" or abandoning their positions, which amounted to "gross insubordination and flat-out refusal to follow their employer's directions." Petitioner Br. 23. The Company

7

asserts, without any citation to the record, that the owners "[s]imply want[ed] to interview employees," which "does not mean they were going to terminate them." *Id.* We conclude that substantial evidence supports the Board's finding that the terminations were motivated by, and would not have occurred but for, the employees' replies to the Polanco email. *See Bozzuto's Inc. v. NLRB*, 927 F.3d 672, 683 (2d Cir. 2019) (summarizing *Wright Line* framework for evaluating employer's assertion of legitimate motive). The record evidence clearly demonstrates that the restaurant's managers and owners perceived the Employees' supportive replies as insubordination that could not be tolerated. Notably, all of the written reprimands reflected that motivation for firing the employees. The Company's bare factual assertions to the contrary fail to refute the Board's finding of pretext.

## V.

We have considered all of the Company's remaining arguments and have found them to be without merit. Accordingly, we **DENY** the Company's petition for review and **GRANT** the Board's cross-petition for enforcement.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8