18-812 (L)
Meyer Tool, Inc. v. NLRB

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of February, two thousand nineteen.

PRESENT:  AMALYA L. KEARSE,
            JOHN M. WALKER, JR.,
            DENNIS JACOBS,
                        Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X
MEYER TOOL, INC.,
            Petitioner-Cross-Respondent,

            -v.-                                    18-812, 18-893

NATIONAL LABOR RELATIONS BOARD,

**Respondent-Cross-Petitioner.**

- - - - - - - - - - - - - - - - - - -X

**FOR PETITIONER-
CROSS-RESPONDENT:**

Daniel G. Rosenthal, (Ryan M. Martin <u>on the brief</u>), Jackson Lewis P.C., Cincinnati, OH.

**FOR RESPONDENT-
CROSS-PETITIONER:**

Rebecca J. Johnston, (Usha Dheenan, Supervisory Attorney, Peter B. Robb, General Counsel, John W. Kyle, Deputy General Counsel, David Habenstreit, Assistant General Counsel, <u>on the brief</u>), NLRB, Washington, DC.

On Petition for Review and Cross–Application for Enforcement of an Order of the National Labor Relations Board.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Meyer Tool, Inc.'s petition for review is **DENIED**, and the National Labor Relation Board's cross-application for enforcement is **GRANTED**.

Meyer Tool petitions for review of the National Labor Relations Board ("the Board") order finding that Meyer Tool engaged in unfair labor practices when it summoned the police to removce, indefinitely suspended, and discharged employee William Cannon-El III for engaging in protected, concerted activity. The Board cross-petitions for enforcement. We enforce the Board's order where, giving considerable deference, its legal conclusions are reasonably based, and its factual findings are supported by substantial evidence. <u>HealthBridge Mgmt, LLC v. NLRB</u>, 902 F.3d 37, 43 (2d Cir. 2018). "Remand is warranted if, after looking at the record as a whole, we are left with the impression that no rational trier of fact could reach the conclusion drawn by [the]

2

Board."   Id. (internal quotation marks omitted).   We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

**1.** Meyer Tool disputes the Board's conclusion that Cannon-El was engaged in concerted activity, arguing that Cannon-El pursued only individual concerns.

Action is "concerted" if an individual act has "some demonstrable link with group action," Ewing v. NLRB, 861 F.2d 353, 357 (2d Cir. 1988), such as "circumstances where individual employees seek to initiate or to induce or to prepare for group action, as well as individual employees bringing truly group complaints to the attention of management," Meyers Indus., Inc., 281 NLRB 882, 887 (1986) (Meyers II), aff'd sub nom, Prill v. NLRB, 835 F.2d 1481 (D.C. Cir. 1987).   The intent to initiate group action can "be inferred in the context of a group meeting held to discuss the terms and conditions of employment." NLRB v. Caval Tool Div., 262 F.3d 184, 190 (2d Cir. 2001).

The events leading to Cannon-El's termination began at a department meeting when Meyer Tool management, through night manager Rick Ackerson, announced there would be a new position, night-shift supervisor.   Cannon-El along with John Poff and Chris Bauer raised concerns about the new position, the qualifications of the supervisor, and management's explanation for the change. In response, management accused the night shift of underperforming and taking excessive breaks, which Cannon-El disputed by, in part, raising health concerns regarding the air quality in the facility.   Ackerson then telephoned Meyer Tool's vice president Gordy McGuire to ask that McGuire join the meeting.   McGuire arrived some minutes later and began to yell at Cannon-El while standing over him, "their faces inches apart."   JA 230.   Later that evening, Cannon-El, Poff, and Bauer discussed the meeting, expressing concern about, inter alia, the creation of the new supervisor position, lack of clarity about to whom they were supposed to report, and the "way Ackerson and McGuire handled themselves." JA 231.   Poff told Cannon-El that the way McGuire had spoken to him "was not right."   JA 231.   Poff, Bauer, and Cannon-El agreed that, before their shift the following day, they would go to Meyer Tool's human resources office to file complaints about what had occurred.   JA 231.

3

The next day, Cannon-El, Poff, and Bauer went together to the office human resources employee Tina Loveless to file complaints. After Loveless gave Cannon-El, Poff, and Bauer paper and told them to write out their statements, the three men then went down the hall into a training room where they wrote out their complaints. Bauer finished first and went to file his complaint with human resources employee Deena Adams; a "few minutes" later, Poff finished and joined Bauer in Adams's office, JA 232; Cannon-El finished and went to Adam's office--where Bauer and Poff were already present--a "few minutes" thereafter, JA 232. Cannon-El, while attempting to file his complaint, got into a heated verbal exchange with Adams. At some point during this exchange, Adams told Cannon-El to leave the premises or she would call the police. Adams said she "was going to give him until the count of three to leave, or she was going to call the police." JA 233. Adams said "one" and Cannon-El finished with "two, three" and said "I have done nothing wrong." JA 233. Adams then called the police and Cannon-El, after briefly remaining in the hallway, left the human resources department and went to the lobby where he waited for the police to arrive. In response to his refusal to immediately leave the premises, Meyer Tool suspended and terminated Cannon-El.

Meyer Tool cites Ontario Knife Co. v. NLRB, 637 F.2d 840 (2d Cir. 1980), for the proposition that, even when related to a group concern, an individual protest is not "concerted activity." But, in Ontario Knife there was no evidence that any other employee joined in the individual protest, whereas substantial evidence supports the Board's finding that Poff and Bauer joined Cannon-El in his complaints. See, e.g., JA 231 n.8 (citing Bauer's testimony that, "[W]e were all together. I believe we came together, we were going to leave together.").

Meyer Tool also contends that Cannon-El expressed his own personal gripes and nothing else in his written complaint and during the meetings on May 25 and May 26, and therefore, he was not engaging in protected, concerted activity or addressing group complaints. However, Meyer Tool's argument relies on cherry-picked statements from Cannon-El's testimony, and it fails to consider the record as a whole, which provides substantial evidence to support the Board's determination that Cannon-El expressed a number of the same group concerns that Poff and Bauer expressed in their complaints and during the

4

meeting.   See JA 236.   Moreover, that Cannon-El also complained about his personal mistreatment by management does not defeat a finding that he engaged in concerted, protected activity, because "[e]mployees may act in a concerted fashion for a variety of reasons--some altruistic, some selfish."   Fresh and Easy Neighborhood Market, Inc., 361 NLRB 151, 153 (2014) (quoting Circle K Corp., 305 NLRB 932, 933 (1991), enf'd mem., 989 F.2d 498 (6th Cir. 1993)).

**2.** Meyer Tool argues that Cannon-El lost the protection of the National Labor Relations Act by arguing with and intimidating Adams.   An employee engaged in ostensibly protected activity may nevertheless act "in such an abusive manner that he loses the protection" of the Act.   NLRB v. City Disposal Sys., Inc, 465 U.S. 822, 837 (1984).   The Board evaluates whether an employee's conduct loses protection by considering: "(1) the place of the discussion; (2) the subject matter of the discussion; (3) the nature of the employee's outburst; and (4) whether the outburst was, in any way, provoked by an employer's unfair labor practice."   NLRB v. Pier Sixty, LLC, 855 F.3d 115, 122 (2d Cir. 2017) (quoting Atlantic Steel Co., 245 NLRB 814, 816 (1979)).

Substantial evidence supports the Board's conclusion that Cannon-El remained protected by the Act.   His complaint took place in Meyer Tool's human resources department, away from production areas.   The Board found that the conversation, while heated, did not disrupt any other employee's work or even cause those nearby to close their office doors.   Cannon-El's discussion with Adams was protected activity: questions and concerns regarding management's treatment of the night shift.   The argument lasted a few minutes and involved raised voices on both sides, but the Board found that Cannon-El did not use obscenities, engage in physically intimidating conduct, make threats of physical harm, or disturb customers.   Cf. NLRB v. Starbucks Corp., 679 F.3d 70, 79-80 (2d Cir. 2012) (protection lost if outburst containing obscenities occurs in the presence of employer's customers).

Meyer Tool suggests that Cannon-El was terminated solely because he refused to leave the human resources premises.   But Cannon-El's temporary refusal to comply with Adams's demand was neither "opprobrious [n]or extreme" enough to warrant her calling 911; even "disrespectful, rude, and

5

defiant" behavior is protected by the Act.   See United States Postal Service, 360 NLRB 677, 683 (2014) (internal quotation marks omitted).   To the extent Meyer Tool argues that the Atlantic Steel test does not apply to situations when an employee refuses to leave and thus trespasses on company property, the Board's prior decisions are to the contrary.   See, e.g., Id. at 680-83 (applying Atlantic Steel when employee made threatening comments while trying to file a grievance and subsequently refused to leave the premises until the police were called); Goya Foods, Inc., 356 NLRB 476, 476-77 (2011) (applying Atlantic Steel when employee made disrespectful comments during a meeting and subsequently refused to leave the premises as ordered by a supervisor).

We have considered Meyer Tool's remaining arguments and find them to be without merit.   For the foregoing reasons, we **DENY** Meyer Tool's petition for review, and **GRANT** the National Labor Relation Board's cross-application for enforcement.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK