20-77(L)
*NLRB v. Nico Asphalt Paving, Inc.*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of April, two thousand twenty-one.

PRESENT:
> GUIDO CALABRESI,
> SUSAN L. CARNEY,
> WILLIAM J. NARDINI,
>
> *Circuit Judges.*

---

NATIONAL LABOR RELATIONS BOARD,

>  *Petitioner–Cross-Respondent,*

> v.  Nos. 20-77, 20-361

NICO ASPHALT PAVING, INC., AND ITS SUCCESSOR IN INTEREST,
ALTER EGO, CITY WIDE PAVING, INC.*

>  *Respondents–Cross-Petitioners.*

---

FOR PETITIONER: DAVID SEID (Julie Brock Broido, Peter B. Robb, Alice B. Stock, Ruth E. Burdick,

---

 * The Clerk of the Court is directed to amend the caption to conform to the above.

David Habenstreit, *on the brief)*, National Labor Relations Board, Washington, DC.

FOR RESPONDENTS: MICHAEL T. SCARAGGI, Oransky, Scaraggi & Borg, P.C., West Caldwell, NJ.

Petition for enforcement and cross-petition for review of an order of the National Labor Relations Board.

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the National Labor Relations Board's petition for enforcement of its order entered on November 6, 2019, is **GRANTED, and the cross-petition for review is DENIED**.

Before the Court is the National Labor Relations Board's ("NLRB" or "the Board") application for enforcement of its order dated November 6, 2019, finding that Nico Asphalt Paving, Inc. ("Nico"), and City Wide Paving, Inc. ("City Wide"), violated Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 151, *et seq.*, by failing to recognize and bargain with Construction Council 175, Utility Workers Union of America, AFL-CIO ("Local 175"), the collective bargaining representative of Nico's unit employees in 2016. Nico and City Wide cross-petition for review of the Board's order. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to grant the Board's petition for enforcement.

We review the Board's factual findings for substantial evidence. 29 U.S.C. § 160(e); *see Goodman Piping Prods., Inc. v. NLRB*, 741 F.2d 10, 11 (2d Cir. 1984). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *NLRB v. Pier Sixty, LLC*, 855 F.3d 115, 122 (2d Cir. 2017), *as amended* (May 9, 2017).[1] Where the Board's factual findings depend on credibility determinations, as they do in part here, those determinations "may not be disturbed [on appeal] unless incredible or

---

[1] In quoting cases, this Order omits internal citations, quotation marks, footnotes, and alterations unless otherwise noted.

2

flatly contradicted by undisputed documentary testimony." *NLRB v. Katz's Delicatessen of Houston St., Inc.*, 80 F.3d 755, 763 (2d Cir. 1996).

In determining whether one company is the alter ego of another, the Board examines "whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Goodman Piping Prods.*, 741 F.2d at 11. The Board may also consider evidence of anti-union animus, although a finding of anti-union animus is not required to support an alter ego finding. *A & P Brush Mfg. Corp. v. NLRB*, 140 F.3d 216, 220 (2d Cir. 1998).

The Board's finding that City Wide is the alter ego of Nico is supported by substantial evidence. The Administrative Law Judge (Gardner, *J.*) found that Nico and City Wide were commonly owned and managed by members of the Pietranico family, namely Michael Pietranico, Sr., and his daughter, Dana Pietranico. Michael Pietranico, Sr., established Nico in 1996 and then entered into a collective bargaining agreement with Local 175. Later, in December 2015, Pietranico, Sr., established City Wide, named himself the sole director, and negotiated important contracts on its behalf. City Wide paid Pietranico, Sr., at a substantially higher rate than it paid Dana, even though Dana held the title of President of City Wide and (she testified) she was the "owner" of the company. Special App'x 3. The ALJ also determined that the two companies engaged in the same type of work—asphalt paving services—and that all of City Wide's customers were former Nico customers and all of City Wide's employees were former Nico employees. Finally, in proceedings before the ALJ, Nico and City Wide asserted that City Wide was created to comply with the new contractual requirements of Nico's largest customer, Consolidated Edison ("ConEd"), which required that Nico and its workers affiliate not with Local 175, but with a union belonging to the Building & Construction Trades Council of Greater New York ("BCTC"), such as Highway, Road and Street Construction Laborers Local 1010, LIUNA, AFL–CIO ("Local 1010"). The ALJ concluded that the proffered justification "by definition" meant that City Wide was formed to avoid dealing with the recognized bargaining representative of Nico's employees. *Id.* at 7.

Nico and City Wide's argument that the two companies are not alter egos because they do not share common ownership fails to persuade. In support, they cite Dana Pietranico's testimony that she runs City Wide and started City Wide with her own funds. The ALJ found Dana Pietranico's testimony "unreliable" and her demeanor "evasive," however. Special App'x 5. Furthermore, the ALJ described the official titles held by Dana and her father in City Wide as "not as significant" as their functions, since Pietranico, Sr., continued to handle the most important matters for both Nico and City Wide, while Dana performed substantially the same lower-level managerial work at City Wide as she had been performing at Nico. *Id.* at 6. The companies do not dispute that City Wide paid Pietranico, Sr., $20,000 per month and Dana only $4,000 or that Pietranico, Sr., executed City Wide's "most important contract" with ConEd. *Id.* Nico and City Wide fail to advance a compelling argument that the Board's other factual determinations bearing on its alter ego determination—about the companies' shared location, operations, equipment, customers— are inadequately supported. Accordingly, we see no basis to disturb the Board's conclusion that City Wide is the alter ego of Nico.

We recognize, as did the ALJ, that ConEd's change to its contract terms in 2014— newly requiring that its contractors be party to a collective bargaining agreement with a union belonging to the BCTC—put Nico in a difficult position, since Local 175 was not affiliated with the BCTC. We agree with the ALJ, however, that ConEd's change did not entitle Nico to "unilaterally create an alter ego to address the challenges created by ConEd's position." Special App'x at 8. ConEd amended its contract requirements in October 2014, well before Nico obtained an extension of its contract with ConEd in 2015. Nico was bound by its collective bargaining agreement with Local 175 through June 30, 2017, and yet chose in 2015 to extend its contract with ConEd notwithstanding the conflicting obligations that the new contract imposed. *See W.R. Grace and Co. v. Local Union 759*, 461 U.S. 757, 767 (1983) (company not excused from terms of collective bargaining agreement because it "committed

4

itself voluntarily to two conflicting contractual obligations" and therefore in some respects "[t]he dilemma . . . was of the Company's own making").[2]

Similarly, the record provides substantial support for the Board's finding that Nico failed to bargain with Local 175 over the creation of City Wide. It shows that sometime in 2015, Pietranico, Sr., informed the Local 175 representative, Roland Bedwell, about ConEd's new requirement. Local 175 then unsuccessfully attempted to join the BCTC. In February 2016, Pietranico, Sr., brought up ConEd's requirement again with Local 175 and told Bedwell that he was going to create City Wide. Bedwell responded that he "felt you could not do that, and [he] would go back to [Local 175] and see how [to] handle the situation." App'x 533. At the time of that conversation, however—indeed, as early as December 2015—Pietranico, Sr., had already created City Wide. And by February 2016, Nico had subcontracted *all* of its work—not just its work for ConEd— to City Wide without informing or reaching an agreement on the issue with Local 175. Thus, the global subcontract included work for Nico customers such as Verizon and Welsbach, which were unrelated to ConEd. On this score, the record shows that Nico disingenuously represented to Local 175 that it had "gone out of business." Special App'x 8. The ALJ found "no evidence . . . that the Union was formally notified of Nico's continued operations." *Id.* On substantial evidence review, we are therefore unpersuaded by Nico's claim that it bargained in good faith with Local 175 about the creation of City Wide, and that Local 175 left it with "no choice" but to go ahead as it did. Respondents' Br. at 41.

\* \* \*

---

[2] ConEd's new terms required its contractors to maintain active collective bargaining agreements with a union that belonged to the BCTC "unless otherwise agreed." Special App'x 3. Nico continued performing work for ConEd with Local 175 employees throughout 2015 and into 2016, despite ConEd's representation that it was ready to enforce the BCTC provision. It was not until February 2016 that problems arose.

We have considered Nico and City Wide's remaining arguments and find in them no basis to decline to enforce the Board's petition. For the foregoing reasons, we **GRANT** the Board's petition for enforcement of the November 6, 2019 Order, and **DENY** the cross-petition for review.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court